

**SIGNED this 21st day of October, 2014**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

ROCKY DEE ALEXANDER                             Case No. 13-13462
TRACEY ANNETTE ALEXANDER,                       Chapter 13

       Debtors.

Appearances:

Richard L. Banks, Richard Banks & Associates, P.C., Cleveland, Tennessee, for the Debtors

Kara L. West, Chattanooga, Tennessee, for the Chapter 13 Trustee

United States Bankruptcy Court
Judge Shelley D. Rucker

## MEMORANDUM

      Debtors Rocky Dee Alexander and Tracey Annette Alexander (collectively "Debtors") filed a Supplemental Fee Request for Non-Routine Services on July 3, 2014 related to "non-routine" objections to four claims: Claim No. 14 – RJM Acquisitions, LLC;

1

Claim No. 15 – RJM Acquisitions, LLC, Claim No. 24 – Resurgent Capital Services, LLC; and, Claim No. 27 – Memorial Heart Institute, LLC. On July 21, 2014, the Chapter 13 Trustee filed an Objection to Supplemental Fee Request on the sole grounds that the requested fees substantially eliminated any benefit to the estate realized by the disallowance of those claims.

After hearing argument on September 11, 2014, the Court will address whether the Trustee's objection should be sustained and whether the requested amount of fees is appropriate under the Sixth Circuit's lodestar analysis. The Court has reviewed the pleadings filed in this case, the argument of counsel, and the entire record in the case. It concludes that the Trustee's Objection will be overruled in part and sustained in part and that a supplemental fee in the amount of $631.24 will be awarded.

In support of its ruling, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 made applicable to contested matters by Fed. R. Bankr. P. 9014(c). This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157 (b)(2)(A) and (B).

## I.  FACTS

### A.  DISCLOSURE OF COMPENSATION

The Debtors filed their Chapter 13 Petition on July 16, 2013. [Case No. 13-13462, Doc. 1]. Also on July 16, 2013, Mr. Banks filed a Disclosure of Compensation of Attorney For Debtor pursuant to Fed. R. Bankr. P. 2016(b). The Disclosure provides that the attorney "will not charge any additional amount for any services rendered or expenses incurred prior to confirmation of the Chapter 13 Plan, or for any services or expenses that [he] expect[s] to render or incur after confirmation." [Doc. 5, at p. 1]. The Disclosure listed the following as a

2

"routine" service included in Debtor's $3,000 base fee: "Preparation, filing and prosecution of objections to untimely filed claims and objections to duplicate claims." [Doc. 5, at p. 1]. The Disclosure excepted certain services for which additional fees could be charged. [Doc. 5, at p. 2]. These services included "non-routine claim objections." *Id.* The Debtors' attorney contends his services were provided for "non-routine objections." The attorney offered no other contract executed pursuant to 11 U.S.C. § 528(a)(1) that indicated the Debtors and their attorney had any different agreement as to what services would be provided for the base fee. The court awarded a fee of $3000 in the order of confirmation. [Doc. 30]

    B.   OBJECTIONS

        1.   <u>RJM Acquisitions</u>

On August 16, 2013, RJM Acquisitions, LLC ("RJM") filed claim no. 14 for $144.96 on the basis of "Club Purchases." [Doc. 14-1]. RJM's "Statement Summary" indicates the account originated with "Homestyle Books Book Club" and was purchased by RJM on February 11, 2008. *Id.* RJM also filed claim no. 15 for $540.37 on the basis of "Club Purchases." The "Statement Summary" indicates the debt originated from "Fingerhut," and was purchased by RJM on August 16, 2002. [Doc. 15-1].

Debtors objected to both claims on the grounds that "the claims and attachments did not reflect a date within six (6) years of the petition date" and that collection was time barred because of Tennessee's statute of limitations, Tenn. Code Ann. § 28-3-109. [Docs. 32 and 33]. The claim was, therefore, unenforceable against the Debtors under applicable non-bankruptcy law and should be disallowed under 11 U.S.C. § 502(b)(1). RJM did not respond, but on September 18, 2013, it withdrew its claims without an order as required by Fed. R. Bankr. P. 3006. At a hearing on October 17, 2013, the Court sustained Debtors' Objections to both

claims. [Docs. 35, 36, 41, 42]. Orders disallowing the claims entered on October 18, 2013. The Debtors seek an additional $315.00 in fees and $26.82 in expenses for this work.

    2. <u>Resurgent Capital Services</u>

On November 7, 2013, Resurgent Capital Services as agent for LVNV Funding LLC ("Resurgent") filed a claim for $713.30 on the basis of "credit card" with attachments indicating that Capital One Bank sold Debtors' accounts to North Star Capital Acquisition LLC,[1] who subsequently assigned the accounts to LVNV Funding LLC on December 30, 2011. [Doc. 24-1]. Debtors objected to the claim on the grounds that it was unenforceable against the Debtors under 11 U.S.C. § 502(b)(1) because it did not reflect a date within six (6) years of the filing and was therefore outside Tennessee's statute of limitations. Resurgent did not respond.

The Court entered an Order disallowing the claim on December 19, 2013. [Docs. 45, 49]. The Debtors seek an additional $277.50 in fees and $11.00 in expenses for these services.

    3. <u>Memorial Heart Institute, LLC</u>

On November 18, 2013, Memorial Heart Institute, LLC ("Memorial") filed a claim for $707.60 on the basis of "Service," and Debtor objected on the grounds the claim was filed after the claims bar date of November 12, 2013. [Doc. 46]. The Court entered an Order sustaining the Objection on January 23, 2014. [Doc. 51]. Unlike the other three objections, this objection was based upon the grounds specifically listed as a type of service included in the fee of $3,000. The Debtors seek an additional $97.50 in fees and $4.46 in expenses for these services.

  C. DEBTORS' SUPPLEMENTAL FEE APPLICATION

Debtors request a total of $733.20 in attorney fees and expenses for 5.3 hours of legal

---

[1] The purchase price of the accounts is redacted. [Doc. 24-1].

4

work performed primarily from September to December of 2013. [Doc. 53. Ex. A]. Debtors' attorney and a paralegal spent one hour reviewing claims; one hour and four-tenths (1.4) filing objections; one-hour and four-tenths (1.4) preparing for and attending a hearing; half an hour reviewing received Orders; and one hour preparing the time sheets and for the additional fee application. *Id.* Debtors' attorney charged $300 per hour for one hour and three-tenths (1.3) of work, and his paralegal charged $75 per hour for four hours of work. *Id.* The difference in the time spent objecting to the RJM and Resurgent Claims compared to the Memorial Claim is primarily the time spent preparing for and attending the hearings on the objection. The Memorial objection utilized the passive notice procedure E.D. Tenn 3007-1(a) and (b) and 9013-1(h)(xi). Although the same passive notice procedure was available, Debtor's attorney set the RJM and Resurgent objections for hearing pursuant to E.D. Tenn LBR 3007-1(a) and 9013-1(f).

Debtors assert that unsecured claims will be paid within a shorter time as a result of the disallowances, and the additional amount paid as fees, if allowed, will not diminish the 100% dividend to unsecured creditors proposed in the plan. *Id.*

D. TRUSTEE'S OBJECTION AND THE HEARING

On July 21, 2014, the Trustee filed an Objection to Debtors' Supplemental Fee Request on the grounds that the "fees in this case substantial[ly] eliminates [*sic*] any benefit to the estate based on the claim objection(s)." [Doc. 54]. The Trustee calculates the net benefit to the estate to be $1,373, derived by subtracting the fees and expenses of $733.20 from the $2,106.23 of claims disallowed. Counsel for the Debtor filed similar supplemental fee requests in six other cases based upon "non-routine" objections,[2] and the Trustee asks the Court to

---

[2] Case nos. 1:11-bk-12268, 1:12-bk-10044, 1:12-bk-11785, 1:12-bk-15811, 1:13-bk-12314, 1:13-bk-12583.

5

"critically review" all of these requests. *Id.*

The Trustee's only basis for objection to Debtors' attonrey's fee request is the lack of economic benefit to the estate. Counsel for the Debtors argued that Debtors' estate is benefited, along with the estates of all debtors, by objections to the types of claims in question. Debtors' attorney referenced an alleged trend in which buyers of consumer debt purchase stale accounts and file them in bankruptcy court *en masse* in the hope that some of the claims will be paid, knowing full well that the claims are unenforceable under state law. He argues that these unenforceable claims lengthen plans in 100% cases and reduce dividends to creditors with enforceable claims provided for in percentage or pro rata plans. The court must decide whether the services which may result in marginal recoveries for the estate are compensable by the estate.

The Court appreciates the Trustee's request for a critical review of the supplemental fee application in this case and the other six cases, and acknowledges that there is a reason for concern. Allowance of fees for the services that: a) confer no or only minimal benefits on debtors and b) exchange dischargeable unsecured debt for administrative debt obligations without evidence of the debtor's participation in the decision to pursue the objections could be harmful to both debtors and creditors, while benefitting only counsel. Such allowance would disregard the limitation on the trustee's duty to object to claims contained in the Bankruptcy Code. 11 U.S.C. §§ 1302(b)(1) and 704(a)(5). The trustee is obligated to object to claims "if a purpose would be served." *Id.* The Debtors' attorney should also have to demonstrate the purpose to be served by objecting to claims. However, for the reasons discussed below, the court does not find those concerns to be present in this case. The first reason is that the Debtors' attorney has demonstrated that a purpose was served. The second reason is that

6

counsel for the Trustee announced at the hearing that the Trustee has taken over objections to claims based on statute of limitations defenses except for Mr. Banks' cases. This decision greatly ameliorates the risk of abuse because there will no longer be a need for debtors to incur this expense. The seven fee applications arose while the Trustee was beginning to assume these duties; and the court will review them in light of the timing and the rules applicable at that time.

## II.     LAW & ANALYSIS

### A.  THE SIXTH CIRCUIT'S LODESTAR ANALYSIS

Under the Bankruptcy Code, a professional may receive "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person[.]" 11 U.S.C. § 330(a)(1)(A). Because there is no provision in the Code requiring debtor's counsel in a Chapter 13 case to be approved by the court, counsel can seek fees without first obtaining court approval of the hiring. *In re Harris,* 298 B.R. 319, 321-2 (Bankr. E.D. Tenn. 2003). Thereafter, however, even though court approval is not necessary for the employment of a Chapter 13 debtor's attorney, compensation of that attorney, including interim compensation, still requires court approval. *Id.* at 321 (citing 11 U.S.C. § 330(a)(4)(B); Fed. R. Bankr. P. 2016(a)). A professional seeking compensation "shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).

The fee allowance procedure is modified by local rules in the case of debtor's attorney fees in chapter 13 cases. In chapter 13 cases, a debtor's attorney may request a base fee, without an itemization, but that fee may not exceed $3,000 and must cover anticipated

"routine" services. E.D. Tenn. LBR 2016-1(a)(1). *See also In re Williams*, 357 B.R. 434, 439 (B.A.P. 6th Cir. 2007) (citing Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1 (3d ed. 2002 and Supp. 2004)). In addition to the base fee, a debtor's attorney may also request additional compensation for services and expenses not considered routine, and then an itemized application is required. E.D. Tenn. LBR 2016-1(a)(2). In this case, Debtors' counsel requested and was awarded the maximum base fee of $3,000 at confirmation based on his Disclosure of Compensation. [Doc. 30]. He now seeks an additional $733.20 for 5.4 hours of services, which he categorizes as "non-routine."

The court finds that only the RJM and Resurgent objections are arguably "non-routine." The objection to the Memorial Heart Institute, LLC's claim, based on late filing, falls squarely within the list of routine services for which Mr. Banks has received the base fee. Disclosure of Compensation [Doc. 30]. The court will not allow any additional fee for that objection. As for the remaining services, the court will apply the lodestar analysis mandated by the Sixth Circuit.

"[T]he court will arrive at an attorney's fee by first determining the 'lodestar' amount, which is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.'" *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991) (quoting *Grant v. George Schumann Tire & Battery Co.,* 908 F.2d 874, 879 (11th Cir.1990)). "After the lodestar figure is established, the additional factors set forth in [11 USC § 330(a)] are examined, and compensation is adjusted accordingly to achieve the most reasonable result." *In re Jones*, 2008 WL 4552370, at *2 (citing *Geier v. Sundquist,* 372 F.3d 784, 792 (6th Cir.2004)). Those factors are as follows:

    **(A)** the time spent on such services;

    **(B)** the rates charged for such services;

8

> **(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> **(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> **(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> **(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). As the Sixth Circuit opines in *Boddy*, the "lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked," *Boddy*, 950 F.2d at 338, so the Court will determine the lodestar amount while addressing each factor in turn:

1. <u>Time Spent</u>

Debtor's counsel spent six-tenths (0.6) of an hour disallowing claim nos. 14 and 15, and six-tenths (0.6) disallowing claim no. 24. The paralegals then contributed two and one-tenth (2.1) hours of assistance in reviewing and filing those claims. The Court finds that this appears to be a very efficient use of the attorney's time, with the bulk of the time for initial review, drafting, and filing being spent by a paraprofessional. For the disallowance of claim nos. 14, 15, and 24, the attorney prepared for and attended two hearings, and the Court notes that the thirty minutes claimed for preparation and attendance at each hearing does not include travel time from the attorney's Cleveland, Tennessee office, and it appears to reflect an appropriate apportionment of the time spent by the attorney at the docket call between the Alexanders and other clients.

### 2. Reasonable Hourly Rate

"A major factor in determining what is a reasonable hourly rate for purposes of Lodestar is whether the rate charged is comparable to rates charged by comparable attorneys in the local area." *In re Atwell*, 148 B.R. 483, 489 (Bankr. W.D. Ky. 1993). Debtor's attorney, Mr. Banks, has provided services to debtors in the Eastern District of Tennessee for over thirty years and currently has hundreds of cases pending. Local chapter 13 practitioners[3] with similar experience and expertise as Debtor's attorney charge an hourly rate of $250 to $300. The $75 per hour for paralegal work is on the low end[4] of the spectrum for this district.

The Court finds this rate to be reasonable and will now consider the other lodestar factors in order to address the Trustee's Objection.

### 3. Necessary and Beneficial Services

The Trustee objects to Debtors' fee application in this case, and the fee applications in the six other cases handled by Debtors' counsel, on the grounds of inadequate monetary benefit to the estate. The "economy of the estate" is no longer a principle governing the award of attorney's fees in the bankruptcy court. *In re Boddy*, 950 F.2d at 337 (6th Cir. 1991) (citing 124 Cong.Rec. 33,994 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6505, 6511 ("Notions of economy of the estate in fixing fees are outdated and have no place in a bankruptcy code")).

The Court has addressed this issue before. In *Mckenzie*, the Chapter 7 Trustee requested fees for special counsel that was hired to prosecute a motion to vacate the dismissal of an adversary proceeding. *In re McKenzie*, 494 B.R. 329, 332 (Bankr. E.D. Tenn. 2013).

---

[3] Mark Young ($300/hr, 37 years), Kenneth Rannick ($300/hr, 30 years), and Tom Bible ($250/hr, 23 years).

[4] Young Paralegal ($70/hr), Rannick Paralegal ($100/hr), and Bible Paralegal ($90/hr)

Although the motion to vacate was denied, the court found that the services were compensable. *Id.* Addressing a creditor's objection that the fees "produced no benefit to the estate," this Court held that, under 11 U.S.C. § 330, the fees were reasonably necessary because benefit to the estate need not be *economic* benefit and need not be an economic benefit solely for the unsecured creditors. *Id.* at 335 (citing *In re Veltri Metal Products, Inc.*, 189 F.App'x. 385, 389–90 (6th Cir.2006)) (*emphasis added*).

In the instant case, Debtors' attorney did realize a net economic benefit of $1,373 for the estate even if all the fees requested were rewarded. The successful objections shortened the duration of the plan for the unsecured creditors. In addition, Debtors' counsel argued at the hearing that Debtors' estate, along with the estates of all Chapter 13 debtors, is benefited by the disallowance of facially unenforceable claims filed by consumer debt buyers. While the court was not presented with evidence in this case of the overall benefit to the system, the court notes that the Trustee has taken over filing these objections so he must consider these objections to serve a purpose.

The court is also concerned with the consequences of failing to object. If the Chapter 13 Trustee overlooked the objections and paid the claims and the case was later dismissed, these creditors might argue that the Debtors had revived these stale claims by voluntary payment. *See, e.g., Ingram v. Earthman*, 993 S.W.2d 611, 638 (Tenn. Ct. App. 1998) (describing the conditions necessary for the equitable doctrine of revival.). For all of the foregoing reasons, the court finds that there was a benefit to the estate produced by the objections in this case.

With respect to the necessity of the services, it appears that these services were provided before or close to the time the Trustee began objecting to these claims in November of 2013. For this time period, the court finds the services to have been necessary. In the

future, however, fees for filing objections based on the defense of the statute of limitations may not be necessary while the Chapter 13 Trustee is filing such objections.

    4. <u>Skill and Experience in Bankruptcy</u>

Debtors' counsel has skill and experience in this area. He and other members of his firm appear competently and frequently before this court.

    5. <u>Comparable Non-bankruptcy Compensation</u>

The Trustee raised no objection on this basis, and the court finds no evidence that the Debtors were charged any more or less than Mr. Banks charges for non-bankruptcy services.

    B.  ROUTINE VS. NON-ROUTINE SERVICES

Debtor's Disclosure of Compensation expressly states that routine matters are included in the base fee [Doc. 5, at p. 1], and objections to claims are usually routine matters in this jurisdiction. *See, e.g., In re Jones*, No. 08-30294, 2008 WL 4552370, at *4 (Bankr. E.D. Tenn. Oct. 6, 2008). *See also In re Dorn*, 167 B.R. 860, 868 (Bankr. S.D. Ohio 1994). *See generally United States trustee's guidelines for fee and reimbursement applications*, 16A Tenn. Prac., Debtor-Creditor Law and Practice § 30:8 (2d ed.) ("The United States Trustee encourages applicants to consider how to assign and staff more routine and 'commoditized' work, such as avoidance actions and *claims objections*, and to consider whether lower cost co-counsel should be retained for discrete types of work, while being careful to avoid duplication, overlap, and inefficiencies.") (*emphasis added*). However, this court's local rules allow supplemental fee requests for services usually *not* considered routine. E.D. Tenn. LBR 2016-1(a)(2). "Non-routine" claim objections are listed in the examples of non-routine services. [Doc. 5, at p. 2].

The court has not ruled on whether objections to claims based on the statute of limitations defense are routine. There are two types of claim objections listed with "routine"

services in Local Rule 2016-1.  They are objections to late filed or duplicative claims.  These objections have a number of characteristics in common with an objection based on the Statute of Limitations.  The basis for an objection to a duplicate claim or a late filed claim can be determined by a review of the court record only.  The objections do not require lengthy consultation with a client, preparation of affidavits, or review of documents other than those attached to the proof of claim itself. The objections themselves are short and formulaic. Passive notice is available to avoid the need for attendance at a hearing. E.D. Tenn. LBR 3007-1(a). These objections are rarely responded to by creditors. Many result in the creditor withdrawing the claim. All of these characteristics of a routine service appear to be present in the statute of limitations objections.

The time spent on the objection to the Memorial proof of claim is almost identical to the time spent on the objections to the proofs of claim of RJM and Resurgent claims when the time to prepare for and attend the hearing is excluded. The text of the objections and the proposed orders appears to be a form. None of the creditors appeared at the hearings and one even withdrew its claim. The assumption of the task by the Chapter 13 Trustee is further evidence that this task has become routine.  For these reasons, the court concludes an objection to a proof of claim, to which  Fed. R. Bankr. P. 3001(c) is applicable, based on the statute of limitations is a routine service where the objection relies solely on the information contained in or missing from the proof of claim. Therefore, a supplemental request is not appropriate since it has been covered by the base fee paid.

Despite this conclusion, the court will not impose this interpretation retroactively. The Court acknowledges that these objections have not always been "routine." In small percentage or remainder plans, the court previously saw very few such objections to claims; however, stale

claims are creating feasibility problems in more cases and claims are being reviewed with more care. One court has referred to this new volume of stale proofs of claim as a "deluge" that has hit the system. *See Crawford v. LVNV Funding, LLC,* 758 F.3d 1254, 1256 (11th Cir. 2014) ("A deluge has swept through U.S. bankruptcy courts of late. Consumer debt buyers—armed with hundreds of delinquent accounts purchased from creditors—are filing proofs of claim on debts deemed unenforceable under state statutes of limitations."). For example, the Resurgent claim is based on LVNV Funding LLC's purchase of Debtors' credit card account on December 30, 2011, even though the account was charged off on January 23, 2002. [Doc. 24-1]. In November of 2012, the *Federal Rules of Bankruptcy Procedure* were amended to add additional requirements for creditors to include in their proofs of claim, such as the last payment date and the charge off date. Fed. R. Bankr. P. 3001(c). Prior to the effective date of Rule 3001(c) and for some time thereafter, this judge required a debtor to provide an affidavit asserting that the claim was stale and that there had been no collection efforts or payments in the prior six years. *See In re Gorman*, 495 B.R. 823, 827 (Bankr. E.D. Tenn. 2013). Because of the rule change requiring the creditor to disclose the dates relevant to a statute of limitations defense, the court has allowed debtors to make a statute of limitations objection to a proof of claim for revolving debt by alleging without an affidavit that: a) the claim is unenforceable because the claim arose beyond the six years prior to filing; b) the defense of the statute of limitation under the appropriate state law is applicable; and, c) nothing on the face of the claim contradicts those allegations. If the creditor fails to respond, the court has entered an order based on Fed R. Civ. P. 55, made applicable to contested matters by Fed. R. Bankr. P. 9014(c). Without the requirement of an affidavit from the debtor, the objection process is now based solely on a review of the proof of claim itself and is based on the contents of the record. This

interpretation of the amendment to the rule has made such objections as routine as objections to late filed claims.

### III.     Conclusion

Based on the foregoing, Debtors' attorney's fee application will be granted for $631.24 in fees and expenses for objecting to the proofs of claim filed by RJM and Resurgent. The application will be denied with respect to $101.96 in fees and expenses related to the objection to the proof of claim of Memorial.

A separate order will enter.

# # #